David S. Markun (State Bar No. 108067)
dmarkun@mzclaw.com
Jeffrey K. Compton (State Bar No. 142969)
jcompton@mzclaw.com
Andrew P. Danza (State Bar No. 326084)
adanza@mzclaw.com
**MARKUN ZUSMAN & COMPTON LLP**
16255 Ventura Blvd., Suite 910
Encino, CA 91436
Telephone: (310) 454-5900
Facsimile: (310) 454-5970

*Attorneys for Plaintiff Jubilant DraxImage Inc., dba Jubilant Radiopharmacies*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUBILANT DRAXIMAGE INC., DBA JUBILANT RADIOPHARMACIES,<br><br>*Plaintiff*,<br><br>v.<br><br>HINSHAW & CULBERTSON LLP,<br><br>*Defendant*. | Civil Action No.: 2:23-cv-3461<br><br>**COMPLAINT FOR:**<br><br>**1) LEGAL MALPRACTICE**<br>**2) BREACH OF FIDUCIARY DUTY**<br><br>**DEMAND FOR JURY TRIAL** |

**PLAINTIFF'S COMPLAINT**

## PLAINTIFF'S COMPLAINT

Plaintiff Jubilant DraxImage Inc., dba Jubilant Radiopharmacies ("Plaintiff" or "Jubilant"), hereby alleges as follows:

### I. INTRODUCTION

1. In October 2020, Jubilant retained Defendant Hinshaw & Culbertson LLP ("Defendant" or "Hinshaw") to assist in securing certain new pharmacy licenses required as a result of an internal transaction that involved the purchase of the assets of Jubilant DraxImage Radiopharmacies, Inc. This lawsuit for legal malpractice arises out of Defendant's failures to provide accurate advice and information about the status of certain applications and ultimately its failure to secure certain licenses in several states both before and after closing of the transaction. As a result of Defendant's malpractice, all of Jubilant's business in North Carolina was shut down and certain of Jubilant's services in several other locations were temporarily suspended, resulting in Jubilant incurring significant damages.

### II. PARTIES

2. Plaintiff is a corporation incorporated under the laws of Canada where it has its principal place of business.

3. Defendant is a national law firm, structured as a limited liability partnership, headquartered in Chicago, Illinois with offices and partners domiciled in several states including California. At all times Defendant's Los Angeles-based partners Noah Jussim ("Jussim") and Michael Dowell ("Dowell") were acting within the course and scope of their agency relationships with Defendant.

### III. JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1332 as the claim is between citizens of Canada and the United States and the amount in controversy exceeds

seventy-five thousand dollars ($75,000.00).

5. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) as a substantial part of the events, or omissions giving rise to the claim occurred in this District.

## IV. FACTUAL BACKROUND

### A. *Plaintiff Jubilant DraxImage Inc., dba Jubilant Radiopharmacies*

6. Jubilant is a global leader in the development, manufacturing and sale of radiopharmaceuticals used for diagnosing and treating certain diseases, including various types of cancer. Jubilant is a subsidiary of Jubilant Pharmova Ltd., which is an international global pharmaceutical company that supplies various pharmaceutical and medical products in more than 85 countries. Jubilant has 45 Radiopharmacies in 20 states in the United States serving healthcare providers in 28 of the 30 largest U.S. metro areas. This makes Jubilant the second largest radiopharmacy company in the country. Jubilant previously had a pharmacy location in Apex, North Carolina, and had five non-resident licenses in other states that enabled it to deliver its pharmacy products to North Carolina from pharmacies in those states.

7. As a result of an internal transaction on or about June 1, 2021, Jubilant was required by the Boards of Pharmacy in all the states in which it operated to secure new resident and non-resident licenses. Some states required approval of the new license before closing of the transaction while others required approval immediately after closing.

8. Jubilant retained Defendant as its lawyers in October 2020 in anticipation of the closing of the internal purchase transaction and to assist and advise it in the closing and state licensing matters. Representatives of Jubilant informed Jussim that the closing of the transaction would be on June 1, 2021. Because of the importance of North Carolina for Plaintiff's national operations, Jubilant asked Jussim in advance of the closing whether all the licenses would be timely obtained. In response Jussim assured Jubilant that all required licenses would be in place by the anticipated closing date.

9. Several months later, Jussim called Jubilant and informed it that Hinshaw had failed to secure required pre-closure licenses in North Carolina. Jussim then suggested that Jubilant could submit false information to the North Carolina Board of Pharmacy (the "Board") about the closing date of the transaction, in an attempt to mask Defendant's error, and obtain the Board's approval for new licenses. Jubilant refused to authorize the submission of false information to the Board. Jubilant then asked Jussim to confirm that Defendant had in fact erred and that pre-transfer licenses were in fact necessary.

10. Jussim then brought in Dowell, another partner of Hinshaw, to participate in the engagement. Defendant conducted further research and Jussim and Dowell confirmed to Jubilant that an error had been made and that a pre-transfer license was required and not obtained by Defendant. Defendant advised Jubilant that one solution would be to close Jubilant's North Carolina pharmacies for twenty-four hours and then resubmit an application for appropriate licenses. Based on Defendant's advice, Jubilant closed its Apex pharmacy and deliveries in that state for a twenty-four (24) hour period while Jussim submitted a new application to the Board. In the meantime on August 25, 2021 Dowell sent Jubilant an email that stated in part: "If the license is not approved on today *you will not be prohibited* from dispensing on tomorrow…" (Emphasis added). The pharmacy then resumed operations. However, the new application was completed improperly by Defendant. More specifically, the application was defectively insufficient as it was not reviewed and approved by the Pharmacist in Charge as required by North Carolina law. The Board later informed Defendant of this failure and the application had to be withdrawn.

11. After close of business on August 25th, Dowell forwarded Jubilant an email from Lee Rosebush of Baker Hostetler (which Hinshaw had retained to assist resolving the issues and at all times herein was acting as an agent of Hinshaw) which had been received by Dowell much earlier in the day. The email referenced a call between Mr. Rosebush and the Board that among other things indicated the Board was confused

1   that the change in location box had been checked in the application.  The email also
2   indicated that the Board could not authorize any activity in the Apex location other than
3   transferring prescriptions.  The Board had also informed Defendant that it would be
4   visiting the Apex location the next day.

5         12.   Jubilant then responded to Dowell with two emails – one pointed out that
6   there had been no change of location, and the other informed Dowell that it was "critical"
7   that the company dispense tomorrow and that there was one patient who was having
8   a critical medical procedure the next morning.  Instead of advising Jubilant – in no
9   uncertain terms – to cease operations the next day, and warning it that the Board would
10  be visiting the Apex location the next morning, Dowell sent an email back that suggested
11  a call with him and Mr. Rosebush later that night.  Jubilant also asked Defendant to have
12  an immediate discussion with the Board representative.  However, by the time the call
13  with Mr. Rosebush and Dowell could be held it was too late in the day and the Board
14  was closed.

15        13.   Dowell set up a call that was held at 9:30 p.m. on August 25th which
16  included Dowell, Mr. Rosebush and several representatives of Jubilant.  Before the call
17  Jubilant had several calls with Dowell in which Jubilant emphasized the necessity of
18  being able to service its customers the next day.  During the call Jubilant's representatives
19  reiterated it faced a dilemma since it had duties to its patients and, because of the
20  particularities of radiopharmaceutical prescriptions, could not service them if it shut
21  down the next morning.

22        14.   Facing this dilemma, Jubilant again turned to Defendant for advice as to
23  how to proceed.  In response Defendant affirmed that Jubilant had duties and obligations
24  to its patients.  Based on this advice, Jubilant continued operations of delivery of
25  prescriptions to patients the next morning.  Had Defendant advised Jubilant that, despite
26  its obligations to its patients, it still had to shut down the Apex location, and that failure
27  to do so could result in an investigation with the potential for far reaching negative
28  repercussions, it would have done so.  Dowell clearly knew that Jubilant planned to

open and dispense radiopharmaceuticals necessary for patient care the next morning because he submitted yet another round of applications early in the morning of August 26th apparently under the mistaken assumption that doing so would enable Jubilant to operate on August 26th.

15. Officials of the Board then arrived at Jubilant's facilities mid-morning on August 26, 2021 and shut down the Apex, North Carolina pharmacy. As noted above, Defendant never advised Jubilant that the Board had advised that they would be arriving at the pharmacy the following day and never advised Plaintiff of the potential negative repercussions of operating on August 26th.

16. Unfortunately, because the first attempt at reapplying for a license was completed improperly by Defendant, Jubilant did not immediately have the option to again reapply for a new license. The Board told Jubilant that it would conduct a full investigation into the events involved in this matter. Jubilant cooperated fully with this investigation which took over three (3) months to complete. Jubilant thereafter reapplied for a license at the Apex, North Carolina location. However, thereafter Jubilant was told it could only obtain a new license if it agreed to a consent order which had significant sanctions and would have required Jubilant to report the sanctions to virtually every other Board of Pharmacy in states where it operates. This would have put the entire Jubilant pharmacy network at serious risk of additional disruptions and would have imposed additional regulatory sanctions and proceedings as well as loss of customers and revenue.

17. Jussim explained his malfeasance by informing Jubilant representatives that he had been suffering from personal and medical related issues leading up to his failure to secure the proper licenses for North Carolina and other states. He informed Jubilant that the State Bar of California was aware of his medical care. He offered to explain his issues to the Board, but thereafter went on immediate medical leave.

18. Following the closure of the North Carolina pharmacy and the revocation of Plaintiff's resident and non-resident licenses, Dowell further specifically acknowledged

to Jubilant that Defendant had committed malpractice and that he was committed to see that Defendant fairly compensate Jubilant for the loss the malpractice had caused ("Really sorry that our malfeasance has required your company has to spend so much time on this matter. We will do our best to make sure that the matter is resolved in a manner to protect your company's interests").

19. As a direct result of Defendant's malpractice, Jubilant was unable to continue to operate its pharmacy operations in North Carolina. As a result of having to shut down operations in North Carolina, Jubilant suffered damages including but not limited to:

- Costs stemming from covering orders from existing customers through different vendors;
- Lost profits that would have been realized from Jubilant's continued operations;
- Lost profits that would have been realized from Jubilant's potential acquisition of a competitor's locations in North Carolina. Due to the cessation of operations in North Carolina, Jubilant was unable to close the acquisition of the competitor's pharmacy operations;
- Loss of business reputation and profits stemming from the inability to distribute and sell a pediatric cancer drug (MIGB) for Neuroblastoma to three clinical locations in North Carolina and, once the trials are completed, to customers in the state;
- Loss of business reputation and profits stemming from the inability to distribute and sell other diagnostic tools and drugs as they are introduced by Jubilant to other markets;
- Lost profits in markets other than North Carolina where customers have a North Carolina location and required coverage through Jubilant's non-resident licenses;

\\\

- Lost profits stemming from customers who are part of either a Group Purchasing Organization (GPO) or Integrated Delivery Network (IDN) which require Jubilant to have broad pharmacy coverage in states that cover their member's locations;
- Loss of business reputation;
- Losses associated with closing down operations in North Carolina including post-cessation of operation, lease payments, utility costs, carrying costs, salaries and severance to employees; and decommissioning costs associated with shutting down certain facilities;
- Losses stemming from the costs of initial investment and facilities in North Carolina and losses that will be incurred if and when Jubilant is able to re-establish itself in North Carolina;
- Losses stemming from losing customers in other locations due to cessation of operations in North Carolina; and
- Losses stemming from several hundred hours of time spent by other outside counsel and Jubilant employees dealing with the fallout from the shutdown in North Carolina.

20.  The exact amount of damages are unknown at this time but are in excess of $75,000.00.

21.  Plaintiff and Defendant entered into a tolling agreement on or about May 27, 2022, which was extended several times and which tolled the applicable statute of limitations from May 27, 2022 until May 5, 2023.

### FIRST CLAIM FOR RELIEF
*(Legal Malpractice)*

22.  Each of the allegations in paragraphs 1 through 21, above, is incorporated herein.

23. Defendant had the duty of a professional attorney to use such skill, prudence and diligence as other members of the legal profession commonly possess and exercise arising out of Defendant's representation of Jubilant as detailed above.

24. Defendant's misconduct includes, but is not limited to:

- False assurances that they would secure all the necessary licenses for Jubilant to continue operating in North Carolina and other states before the closing of the transaction;
- Failure to secure all necessary licenses before closing of the transaction;
- Advice to Jubilant to lie to the Board about the closing date;
- Failure to properly complete the new application for relicensing once the licenses for pre-approval were not secured timely; and
- Failure to unequivocally advise Jubilant to cease operations before the Apex pharmacy opened on August 26, 2021, and of the scope of repercussions if it operated the next morning so that Jubilant could make an informed decision as to how to proceed.

25. Defendant's conduct as described above constituted a breach of Defendant's duties and the standard of care for negligence.

26. As a direct and proximate cause of Defendant's negligence and carelessness, Plaintiff has been damaged in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### *(Breach of Fiduciary Duty)*

27. Each of the allegations in paragraphs 1 through 26, above, is incorporated herein.

28. A client's retention of a law firm gives rise to a fiduciary relationship between the parties. The scope of an attorney's fiduciary obligations is determined as a matter of law based on the California Rules of Professional Conduct, together

with other statutes and general principles relating to other fiduciary relationships. These fiduciary duties include duties of care, competency, and loyalty.

29. Defendant breached its fiduciary duties owed to Plaintiff by failing to exercise its duties of care, competency, and loyalty by the actions and omissions described above.

30. As a direct and proximate cause of Defendant's breach of fiduciary duty, Plaintiff has been damaged in an amount to be proven at trial.

## V. RELIEF REQUESTED

1. For compensatory damages according to proof;
2. For lost profits according to proof;
3. For costs of suit; and
4. For such other relief that the Court deems proper.

Dated: May 5, 2023                    Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　 /s/ David S. Markun, Esq.
　　　　　　　　　　　　　　　　　　　　David S. Markun
　　　　　　　　　　　　　　　　　　　　dmarkun@mzclaw.com
　　　　　　　　　　　　　　　　　　　　Jeffrey K. Compton
　　　　　　　　　　　　　　　　　　　　jcompton@mzclaw.com
　　　　　　　　　　　　　　　　　　　　Andrew P. Danza
　　　　　　　　　　　　　　　　　　　　adanza@mzclaw.com
　　　　　　　　　　　　　　　　　　　　**MARKUN ZUSMAN & COMPTON LLP**
　　　　　　　　　　　　　　　　　　　　16255 Ventura Blvd., Suite 910
　　　　　　　　　　　　　　　　　　　　Encino, CA 91436
　　　　　　　　　　　　　　　　　　　　Telephone: (310) 454-5900
　　　　　　　　　　　　　　　　　　　　Facsimile: (310) 454-5970

　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff Jubilant DraxImage Inc., dba Jubilant Radiopharmacies*

# DEMAND FOR JURY TRIAL

Plaintiff, Jubilant DraxImage Inc., dba Jubilant Radiopharmacies, hereby demands trial by jury on all issues so triable.

Dated: May 5, 2023         Respectfully submitted,

 /s/ David S. Markun, Esq.
David S. Markun
dmarkun@mzclaw.com
Jeffrey K. Compton
jcompton@mzclaw.com
Andrew P. Danza
adanza@mzclaw.com
**MARKUN ZUSMAN &COMPTON LLP**
16255 Ventura Blvd., Suite 910
Encino, CA 91436
Telephone:  (310) 454-5900
Facsimile:  (310) 454-5970

*Attorneys for Plaintiff Jubilant DraxImage Inc., dba Jubilant Radiopharmacies*